No. 22,539.

THE BELLE SPRINGS CREAMERY COMPANY, *Appellee*, V. THE
FAIRMOUNT CREAMERY COMPANY, *Appellant*.

#### SYLLABUS BY THE COURT.

SALE—*Car of Eggs—Refusal to Accept—Evidence—Judgment.* In an action for damages for the refusal to accept a car of eggs contracted for, it is held that the evidence was sufficient to support the judgment.

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed March 6, 1920. Affirmed.

*C. W. Burch, B. I. Litowich, LaRue Royce,* all of Salina, and *E. J. Hainer,* of Lincoln, Neb., for the appellant.

*S. S. Smith,* of Abilene, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Belle Springs Creamery Company, of Abilene, by reason of communications it had had with J. J. Gafford, a butter, eggs and poultry broker of Omaha, shipped two cars of eggs to Chicago for delivery there to the Fairmount Creamery Company, of Omaha, upon the payment of drafts attached to the bills of lading. The Fairmount company accepted and paid for one car, but refused the other upon the ground that it had contracted for the eggs subject to its inspection and approval at Chicago, and that those in this car had failed to pass such inspection. The market had in the meantime fallen, and the Abilene company sued the Omaha company for the resulting loss. Judgment was rendered for the plaintiff, and the defendant appeals.

The plaintiff's evidence was to this effect: On May 28, 1917, Gafford called its manager, J. S. Engle, on the telephone, said he had a customer who wanted to buy several cars of storage packed eggs and asked if he had anything to offer. Engle answered that he would offer two cars at thirty-five cents a dozen. Gafford then said that his customer, naming the defendant, wanted the eggs subject to inspection. Engle replied that he would sell his usual pack, which in the trade would be considered a good pack. The next day Gafford sent the plain-

tiff a letter, the important part of which read: "This confirms purchase from you of two cars storage at thirty-five cents Chicago for the Fairmount Cry. Co., of Omaha, ship the eggs to Fairmount Cry. Co., Chicago and draw on Omaha. Be careful and put us up a good pack." The eggs were sent in accordance with the agreement, with the result already stated.

The defendant's evidence ·was to this effect: On May 28, 1917, Gafford called up its manager, H. L. McCoy, and offered him two cars of northern Kansas storage packed eggs subject to inspection and approval at Chicago, at thirty-five cents a dozen. McCoy accepted the offer. Later Gafford, who had never been employed by the defendant as its agent or otherwise, told him the eggs belonged to the plaintiff. One car of the eggs was rejected because on inspection it did not meet the test.

The case was tried without a jury. The court accepted the plaintiff's version. of the facts and found expressly that it was not a condition of the sale that the eggs should be subject to inspection, the findings also implying that Gafford had acted as the agent of the defendant in the transaction. A reversal is asked on the ground that the judgment is without support, particularly in that there was no competent evidence that Gafford was the agent of the defendant.

In a very similar case between another plaintiff and this defendant, which arose at about the same time, a like objection was made, but was held to be unavailing because the defendant in a letter to the plaintiff explaining its refusal of the eggs used the expression, relating to its claim that they had been bought subject to inspection: "This was the terms you sold the eggs to us at." This was held to be conclusive of that feature of the controversy because it was an acknowledgment that the car had been purchased of the plaintiff by the defendant. (*Brewer v. Creamery Co.*, 104 Kan. 100, 178 Pac. 250.)

In the correspondence which followed the refusal of the car in the present case, the defendant did not employ that or any equivalent language. Although the general tone of its communications might be deemed to indicate that it regarded itself as a party to a contract with the plaintiff, it did not explicitly say so. What it did say was perhaps consistent with the idea that it had dealt solely with Gafford and had no con-

tractual relations in the matter with anyone else. But the defendant's pleading supplied the acknowledgment which was held in the earlier case to be decisive of the question. In the answer it was expressly stated that "the defendant entered into a verbal contract with the plaintiff" for the purchase of the eggs. In the same sentence it was also said that the contract was entered into through J. J. Gafford, who was the agent of the plaintiff, and that it was a part of the agreement that the eggs were to be subject to inspection. The theory that the defendant dealt only with Gafford and did not know the plaintiff in the deal was therefore not presented, and no such issue was involved. The parties agree that a contract was entered into between them. Their dispute is whether or not by the terms of the contract the eggs were subject to inspection, the solution of this controversy involving the question as to which of them was represented by Gafford in the deal.

It is true that there is no direct and positive evidence that Gafford was the agent of the defendant, except his own statements to the plaintiff's manager, and his agency of course cannot be proved by his own declarations out of court. The story of the communications between Gafford and the plaintiff's manager, however, while incompetent to show that Gafford was the agent of the defendant, was admissible as tending to disprove that he had acted as the agent of the plaintiff, that issue having been raised by the answer. The pleadings established that a contract for the sale of the eggs had been made between the plaintiff and the defendant through negotiations in which Gafford acted in behalf of one or the other, there having been no direct communication between the parties. When it was determined by the finding of the court upon competent evidence that Gafford had not acted as the agent of the plaintiff, it followed in the state of the pleadings that he had acted as the agent of the defendant. On this issue (as to whether Gafford represented the plaintiff) there was a square conflict between the testimony of Gafford and that of the plaintiff's manager, which the court obviously resolved in favor of the plaintiff. Gafford's letter, from which quotation has already been made, doubtless contributed to that conclusion, for it seems wholly inconsistent with the theory that Gafford was

acting for the plaintiff. The court must also be regarded as having discredited the testimony of the defendant's manager so far as it tended to support that theory. The part of the evidence which the court believed showed that Gafford assumed to act as the defendant's agent, and in that capacity undertook to make a contract with the plaintiff; and that the defendant accepted the contract so negotiated in its behalf was inferable from its pleading the existence of a contract between it and the plaintiff, which under the evidence to which credence was given could have been created in no other way.

It having been determined that a contract had been entered into between the plaintiff and the defendant through the intervention of Gafford, and that it was not and could not have been brought about by dealings between him and the defendant, because he was not the agent of the plaintiff, the terms of the contract must be sought in the communications between him and the plaintiff's manager. The latter testified that the contract did not provide for inspection at Chicago. Gafford testified to the contrary. His letter of confirmation contained no mention of such a provision. The decision of the trial court that the sale was not subject to inspection was conclusive upon that matter, which was the real controversy of fact on which the case turns. The requirement that the eggs should pass the defendant's inspection at Chicago being thus disposed of, there was sufficient evidence on the part of the plaintiff that when shipped they met the specifications of the contract— that is, that they were storage packed—the plaintiff's usual pack.

The judgment is affirmed.